W. H. Jordan v. Commissioner.
Jordan v. Commissioner
Docket No. 46045.
United States Tax Court
T.C. Memo 1955-10; 1955 Tax Ct. Memo LEXIS 325; 14 T.C.M. (CCH) 31; T.C.M. (RIA) 55010; January 24, 1955
*325 1. Held, respondent was justified in resorting to the net worth method for reconstructing petitioner's income for the years involved. 2. Held, respondent's net worth computation for 1947, affirmed. 3. Respondent's imposition of fraud penalties for the years involved sustained. 4. Respondent's imposition of the 25 per cent delinquency penalty for failure to file a return for the year 1947, sustained. T. L. Chamberlain, Jr., Esq., Placer County Bank Building, Auburn, Calif., and Frank C. Scott, C.P.A., for the petitioner. Edward H. Boyle, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioner and additions thereto for fraud for the years 1946 and 1947 and an addition thereto for failure to file a return for *326 the year 1947, as follows: 50 Per
25 Per
Cent
Cent
Year
Tax
Deficiency
Penalty
Penalty
1946
Income
$ 2,559.74
$ 1,279.87
1947
Income
32,676.42
16,338.21
$8,169.11 Respondent agrees that his determination should be adjusted to reflect payments made by petitioner on his declaration of estimated tax for 1947. Such adjustment will be made in a Rule 50 recomputation consequent hereon. The issues presented are: (1) whether respondent was justified in resorting to the net worth method of determining petitioner's taxable income for 1946 and 1947; (2) whether respondent's computation accurately reflects petitioner's income; (3) whether any part of the deficiencies thus determined is due to fraud with intent to evade tax; and (4) whether petitioner's failure to file a return for 1947 was due to reasonable cause and not due to willful neglect. Respondent concedes that the year 1946 is barred unless fraud is proven. Findings of Fact The facts stipulated are so found, and, by this reference, made a part hereof. The petitioner is William Henry Jordan, an unmarried individual, who resides at No. 216 1/2 Riverside Avenue, Roseville, California. *327 Petitioner's income tax return for the calendar year 1946 was filed with the collector of internal revenue for the first collection district of California. Petitioner also filed with such collector a declaration of estimated income tax for the calendar year 1947. From some time before 1918 to the early part of 1947, petitioner's occupation was that of a chiropractor. During the year 1946 the petitioner started a business of making and selling medicated soap in collapsible metal tubes. About June, 1947, he leased his place of business and its equipment to another chiropractor, Dr. Stone, whose wife, Marie, had assisted the petitioner in his soap business in 1946 and who continued to so assist him in 1947. The petitioner's soap business was abruptly terminated on October 19, 1947, when the premises at No. 216 Riverside Avenue, Roseville, were raided in the middle of the night, the occupants, Dr. Stone and his wife arrested, and the material and equipment used in the business and the petitioner's vouchers, records, and accounts pertaining thereto were removed to the court house at Auburn, the county seat. At three o'clock in the morning of the same day the petitioner was arrested on *328 charges of murder and conspiracy with the Stones to commit abortion and murder, and was kept in jail for about 26 days before being released on bail April 14, 1948. As a result of his arrest in October, 1947, petitioner was indicted, tried, and convicted on one count of conspiracy to commit abortions and on two counts of performing abortions, once on April 15, 1946, and again on May 26, 1947. For these offenses, petitioner was incarcerated in San Quentin and Chino prisons of the State of California from 1948 to 1951. In petitioner's income tax return for the year 1946, there was shown his income from the soap business on the basis of the cash receipts and disbursements with respect thereto but without any deduction therein for depreciation of the equipment and premises used in carrying on such business. The return was compiled by an accountant named Lindell on the basis of information furnished by the petitioner from his records. The petitioner's declaration of estimated income tax for the year 1947 was twice amended to show finally an estimated tax liability for that year of $425, on account of which estimate he remitted to the collector at San Francisco $275. Petitioner was born *329 on November 17, 1874, in Griggsville, Illinois. He and his mother went to California in 1905 when he was 30 years of age. They brought with them more than $11,000. Thereafter petitioner was employed successively as a streetcar motorman, a cleaning and dye works delivery man, and as chauffeur for the Oakland Police Department during the period 1905 to 1918. While employed by the Oakland Police Department the petitioner studied the chiropractic healing art and obtained a license to practice, and from about 1915 to February, 1922, practiced chiropractic healing in Oakland. Up to 1918 he practiced in conjunction with his employment by the Police Department. In 1922 and 1923, the petitioner practiced chiropractic healing at Lodi, California, and then engaged in such practice from February, 1924, to February, 1926, at Honolulu, Territory of Hawaii. In 1926, petitioner and his wife returned from Honolulu to California and resided during part of that year with his wife's sister and her husband, L. A. Smith, at Long Valley, California. In August of that year, petitioner left for China and Australia, leaving his wife on the Smith farm at Long Valley. The petitioner, with the assistance of *330 one Henry Joe Bechthold, who followed him to Australia, practiced chiropractic healing in Newcastle and Cessnok in New South Wales between October, 1926, and March, 1928. Subsequent to his return from Australia, the petitioner attempted to resume his practice of chiropractic healing in San Bernardino, California; Butte, Montana; Auburn, California; and, finally, in Roseville, California, where he practiced from 1930 to 1946. The petitioner's practice of chiropractic healing in Roseville just about made a living for the petitioner and his wife and did not permit him to accumulate any wealth. Petitioner's wife died on October 3, 1934. Her funeral and burial expenses, as reflected on the books of the Colin H. Bislop Funeral Parlor, amounted to $146.05. The total amount of $146.05 was written off as a bad debt on the Hislop books as of December 31, 1935. Thereafter, petitioner satisfied this indebtedness by paying $15 on July 24, 1936, $50 on October 8, 1940, and $81.50 on January 8, 1941. Petitioner's wife left no estate and no probate proceedings were ever held in connection with her death. In 1939, the petitioner acquired and remodeled an old residence at No. 216 Riverside Avenue *331 in Roseville for use as his office for his practice of chiropractic healing and as a dwelling. On August 26, 1939, petitioner made application for a loan in the amount of $2,000 from Capital Federal Savings and Loan Association, Sacramento, California, in connection with the property at 216 Riverside Avenue. The Association appraised the property and placed thereon a value of $500 for the land and $2,700 for the buildings, a total of $3,200, and approved a loan in the amount of $2,000 at 6.6 per cent interest to be repaid by payment of $22.81 per month for 120 months. The $2,000 borrowed by petitioner was disbursed in part as follows: (1) $426.51 for delinquent city taxes, (2) $187.58 for delinquent county taxes, (3) $682.13 to the Sterling Lumber Company, (4) $261.91 to the Pacific Gas & Electric Company, and (5) $405.90 to petitioner for personal use. The $2,000 loan was repaid by petitioner over a period extending from September 29, 1939, to March 10, 1944, the total interest payments during that time amounting to $495.55. On December 19, 1940, petitioner bought a Chevrolet automobile, in payment of which he was allowed $200 for an old car and paid in installments the sum of *332 $1,027.50. On March 17, 1947, petitioner bought a property, paying $4,026.28 therefor. In October, 1947, petitioner owned a United States Treasury Bond of the face value of $1,000. On or about October 23, 1947, the petitioner had cash assets of the following amounts: $680 in United States currency and $850 in travelers' checks on his person; $51,500 in United States currency ($51,000 in $1,000 bills and $500 in $100 bills) in his safe deposit box in the Roseville Branch Bank and a balance of $57.73 in his commercial checking account in the branch. The 51 one-thousand dollar bills and 5 one-hundred dollar bills found in petitioner's safe deposit box in October, 1947, were of the small size of the currency printed and used only after July 10, 1929. The income tax return filed by petitioner for 1946 was the first return ever filed by him. Respondent reconstructed petitioner's income for the years 1946 and 1947 by use of the so-called increase in net worth method, as follows: ASSETS
1945
1946
1947
1. Cash - safe deposit box
None
None
$51,500.00
2. Cash on hand
None
None
680.00
3. Travelers checks
None
None
860.00
4. Cash in bank
None
None
57.73
5. Note receivable (Dr. Ditman)
None
None
1,000.00
6. Note receivable (I. Martin)
None
$ 9,600.00
9,600.00
7. Accts. receivable (C. Hislop)
None
None
1,000.00
8. Lot in San Diego
None
None
4,000.00
9. Auto - Chevrolet
$ 863.04
863.04
863.04
10. Residence
3,200.00
3,200.00
3,200.00
11. Cash
None
None
10,000.00
Total assets
$4,063.04
$13,663.04
$82,760.77
LIABILITIES
12. Notes payable (C. Hislop)
None
None
$10,000.00
Net worth
$4,063.04
$13,663.04
$72,760.77
Net worth increase
$ 9,600.00
$59,097.73
Estimated living expense
2,000.00
2,000.00
Income taxes paid
258.00
None
Adjusted gross income per investigation
$11,858.00
$61,097.73
Adjusted gross income per return
2,072.63
None
Increase in adjusted gross per investigation
$ 9,785.37
$61,097.73
*333 Respondent's net worth computation was not proved to be erroneous. A part of the deficiencies determined for 1946 and 1947 was due to fraud with intent to evade tax. Petitioner's failure to file a return for 1947 was due to willful negligence and not due to reasonable cause. Opinion VAN FOSSAN, Judge: Four questions are presented by the record in this case. 1. Was respondent justified in resorting to the net worth method in determining petitioner's tax liability? 2. Does respondent's net worth computation properly reflect petitioner's income for the years 1946 and 1947? 3. Is petitioner liable for the fraud penalty for either of the taxable years? 4. Is petitioner liable for a 25 per cent penalty for failure to file a return for 1947? The solution of these questions depends largely, if not entirely, on the facts. They will be considered seriatim. Petitioner kept no books or records worthy of the name. Although a return was filed for 1946, no return was filed for 1947, or for any other year. Under the provisions of section 41, Internal Revenue Code of 1939, in such premises the respondent was justified in using the net worth or any other suitable method which, *334 in the exercise of his judgment, would correctly reflect petitioner's income. The second question involves the accuracy of respondent's computation, which is set out in our findings of fact. The whole testimony of petitioner is shot through with inconsistencies, demonstrable untruths, and obvious fabrications. Illustrative of such testimony is his narration of the hiding of the sum of $43,000 in 1926 in a glass jar placed inside a stone jar and the stone jar being buried 3 feet deep and 3 feet from a certain tree, where it remained until 1934. Such an obvious fabrication would challenge the talents of Edgar Allan Poe. The record shows that petitioner, during the years when he claimed to have a large accumulation of wealth, was borrowing various amounts for current expenses. We are unable to accept as the truth his tale of the saving of $43,000 before 1926. Nor can we believe the account of the additional $40,000 saved while in Australia by virtue of a fabulous contract with a miner's union. Illustrative of the unbelievable character of his testimony is his statement that he treated as many as 40 patients in an hour and that 18 patients an hour was normal. As to the claim of saving *335 $40,000 in Australia, which he claims to have brought back to the United States in 1928, elsewhere in the record he states the saving to have been perhaps $8,000 or $9,000. The burden of proving error in respondent's computation rests on petitioner. This is an affirmative burden, and, absent the requisite proof, respondent's computation must be sustained. Here we find that petitioner has failed in an attempt to demonstrate error. True, he testifies at length in support of his position but for reasons apparent to any one who reads the record, petitioner must fail. We are unable to accept petitioner's testimony as truthful. Thus we must affirm the respondent for failure of proof of error. The next issue is the charge of fraud. On the whole record of the case, we are led by clear and convincing evidence to the conclusion that the deficiencies in the case are due in large part to the fraudulent intention of the petitioner to evade taxes. This conclusion applies to both years, 1946 and 1947. Petitioner filed but one income tax return in his entire life. He absolves himself by blaming his deceased wife with inaction and neglect. In some manner he accumulated a large sum of money. Whether *336 by the unlawful practice of abortions we may only conjecture. His co-conspirators in the abortion practice also amassed large sums of money and had in their possession, when arrested, a total of $19,000. Petitioner was convicted of committing abortions in both 1946 and 1947. In the study of the cases involving fraud, some cases seem to reek with unlawful conduct consistent only with fraudulent intent. This case is one of those. We have no reserved judgment in finding petitioner guilty of fraud on the present record. The final question involves respondent's finding that petitioner's failure to file a return for 1947 was the result of willful negligence and was not due to reasonable cause. The record does not justify a contrary finding. We accordingly find that petitioner's action in not filing a return for 1947 was due to willful negligence and was not due to reasonable cause. Decision will be entered under Rule 50.